IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

WILLIAM P. LEGER, JR.,
#N86167,

                    Plaintiff,                              Case No. 23-cv-00851-SPM

v.

DAVID MITCHELL,
PERCY MYERS,
WEXFORD HEALTH SOURCES, INC.,
CHRISTINE BROWN, and
JOHN DOE,

                    Defendants.

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff William Leger, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Pinckneyville Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE COMPLAINT

Plaintiff alleges that he injured his back lifting and moving his property on January 8, 2021. (Doc. 1-2, p. 13). When he woke up on January 9, 2021, he was still experiencing pain and gave

the correctional officer on the gallery a sick call slip to give to the nurse. Dr. Meyers examined Plaintiff on January 13, 2021, and prescribed Tylenol 500 mg and Naproxen 375 mg and instructed Plaintiff to do light exercised in his cell. (*Id.* at p. 13-14). Dr. Myers told Plaintiff that there would be a future evaluation. (*Id.* at p. 14).

Plaintiff continued to experience back pain and submitted three sick call slips, but he did not see Dr. Myers again until October 5, 2021. (Doc. 1-2, p. 14). Dr. Myers prescribed muscle relaxers and steroids. Plaintiff submitted another sick call request on October 17, 2021, to inform Dr. Myers that his back was getting worse. On October 21, 2021, Dr. Myers ordered x-rays. The x-rays were taken on October 25, 2021. (*Id.*).

Plaintiff had an appointment with Nurse Practitioner Blum on November 4, 2021, to review the x-rays. (Doc. 1-2, p. 14). Blum informed Plaintiff that he had arthritis and degeneration in his spine. Blum ordered more muscle relaxers, steroids, and physical therapy. He told Plaintiff to keep taking the Tylenol and Naproxen that Dr. Myers had previously ordered. Plaintiff asked to see a specialist and told Blum that the current prescriptions were not working. (*Id.*).

On November 29, 2021, Plaintiff saw a physical therapist, Dan Varel. Varel examined Plaintiff and told Plaintiff that he would schedule Plaintiff for one treatment per week for six to eight weeks. (Doc. 1-2, p. 15).

On December 2, 2021, Plaintiff was placed on quarantine after exposure to COVID-19 (Doc. 1-2, p. 15). Plaintiff was transferred to cell R6-A65, an upper gallery cell. Plaintiff told the lieutenant he had a low gallery permit because of a back injury. The lieutenant called the health care unit, and the lieutenant told Plaintiff that the medical staff had told him that Plaintiff did not have a low gallery permit. Plaintiff remained in R6-A65 for ten days and had to climb stairs to shower and use the phone, even though he was in severe pain. When Plaintiff was released from quarantine, he was issued a low gallery permit. (*Id.*).

On December 15, 2021, Plaintiff started physical therapy. (Doc. 1-2, p. 15). After three treatments, Plaintiff told the therapist that the treatments were not helping, and he was hurting after each session. The therapist said she would talk with Dan Varel and see what Varel wanted to do. Plaintiff was scheduled to see Varel on January 17, 2022, but the appointment was canceled. (*Id.*).

Plaintiff put in a sick call request on January 18, 2022, to see Dr. Myers. (Doc. 1-2, p. 16). The next day a nurse gave him regular Tylenol and told him he was scheduled to see Nurse Practitioner Blum in a few days. He talked to another nurse on January 29, 2022, about seeing Dr. Myers, and she said she would "put him in." Later the evening, the nurse brought Plaintiff medicine. Plaintiff continued to submit sick call requests regarding his back pain.

On January 31, 2022, Plaintiff filed a grievance. (Doc. 1-2, p. 16). On February 6, 2022, he put in another sick call request. A nurse came by his cell the next day, and he told her he was in severe pain. The nurse said she would check his file and talk to the doctor. (*Id.*).

On February 17, 2022, Plaintiff saw Dan Varel, the physical therapist. (Doc. 1-2, p. 16). Varel told Plaintiff that he was stopping therapy and would requesting for Plaintiff to have a back brace to see if that would help. (*Id.*). On March 28, 2022, Plaintiff sent a letter to physical therapy stating that the back brace "was not helping much," and he was still having problems. (*Id.*).

Plaintiff continued to submit sick call slips about his back pain. Plaintiff saw Dr. Myers on April 26, 2022. (Doc. 1-2, p. 17). Dr. Myers prescribed Cymbalta 30 mg and told Plaintiff that if that did not work then he would increase the dosage to 60 mg. Dr. Myers told Plaintiff to keep taking the Tylenol and increased the Naproxen from 375 mg to 500mg. (*Id.*).

In June 2022, Plaintiff wrote Dr. Myers and told him that he, Plaintiff, had stopped going to recreation and the dining hall for meals because he was in too much pain. (Doc. 1-2, p. 17). Plaintiff was buying food in the commissary and eating in his cell. Plaintiff was only leaving his cell for mandatory passes and other inmates would assist him in carrying his commissary

purchases. (*Id.*).

Plaintiff saw Dr. Myers again on July 13, 2022. (Doc. 1-2, p. 17). Dr. Myers told Plaintiff he would send him for an MRI. After submitting more sick calls, Plaintiff's Cymbalta prescription was increased to 60 mg and then later 90 mg. (*Id.* at p. 24). Plaintiff had his MRI on November 4, 2022. On November 9, 2022, Dr. Myers told Plaintiff that he would send Plaintiff to a spinal doctor. Plaintiff was scheduled to see a spinal doctor in February 2023, but the appointment was canceled. As of March 14, 2023, Plaintiff had still not seen the specialist. (*Id.*).

## DISCUSSION

Based on the allegations in the Complaint and Plaintiff's articulation of his claims, the Court designates the following count:

> **Count 1:**    Eighth Amendment claim against Defendants for deliberate indifference to Plaintiff's back condition and associated pain.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

Count 1 will proceed against Dr. Myers. Plaintiff alleges that Dr. Myers delayed medical treatment and continued to choose treating Plaintiff with care that was ineffective. *See Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (delay in care can amount to deliberate indifference); *Greeno v. Daley,* 414 F.3d 645, 655 (7th Cir. 2005) (continuing with ineffective treatment can amount to deliberate indifference).

Count 1, however, will be dismissed against the remaining Defendants. Warden Mitchell

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

is listed as a defendant, but there are no allegations against him in the Complaint. Under Section 1983, each defendant must be personally involved in the deprivation of a constitutional right. *See Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014). There is no *respondeat superior* liability for Section 1983 claims. An individual cannot be held liable solely because of his or her supervisory position. To the extent Plaintiff is attempting to state a claim of deliberate indifference against Warden Mitchell solely because Mitchell denied his grievances, these facts also do not state a claim. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Accordingly, Count 1 is dismissed against Warden Mitchell.

Likewise, there are no facts alleged against Wexford Health Sources, Inc. in the Complaint, and Wexford Health Sources, Inc. cannot be held liable solely based on the actions of medical staff at Pinckneyville. *See J.K.J. v. Polk County*, 960 F.3d 367, 377 (7th Cir. 2020). Furthermore, to state a claim against Wexford Health Sources, Inc., a plaintiff must allege that his rights were violated due to a policy or practice. *See Woodward v. Corr. Med. Serv. of Ill., Inc.,* 368 F. 917, 927 (7th Cir. 2004). Because there are not factual allegations concerning Wexford Health Sources, Inc., Count 1 is dismissed as to this entity.

The Court will also dismiss Count 1 against the "John Doe(s)." Plaintiff describes the John Does as nurses in the medical department assigned to work at Pinckneyville who have the responsibility and authority to ensure he receives adequate medical treatment. (Doc. 1, p. 2). In the Complaint, Plaintiff discusses interactions with several unnamed individuals; none have a "John Doe" designation. Without more specificity, it is not clear who he is intending to sue and for what conduct. A plaintiff is required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can properly answer the Complaint. *Twombly*, 550 U.S. at 555. Because the Court cannot distinguish between the different unknown individuals and who are to be considered John Does for the purpose of this suit,

Count 1 against the John Does are dismissed.

The Court also dismisses Count 1 against Christine Brown, the health care unit administrator. The only factual allegation against Brown is that in January 2021 Plaintiff's family called Brown about his "medicine, letting the Health Care Department know his back [was] getting worse." (Doc. 1-2, p. 16). The single fact – that Brown received a phone call from his family – is insufficient for the Court to plausibly infer that Brown acted with deliberate indifference and failed to ensure that Plaintiff received adequate medical care, as alleged. (*Id.* at p. 19). It is not clear what Brown did or failed to do that resulted in a violation of Plaintiff's constitutional rights. As stated above, it is not enough to state that Brown, as the health care administrator, is responsible for his care. Neither can Plaintiff simply state that an individual harmed him. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Brown must have been personally involved in the deprivation. Because Plaintiff does not describe how Brown was involved in his health care, Count 1 is dismissed as to Brown.

### MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff has filed two motions for recruitment of counsel, which are **DENIED**.[2] (Doc. 3, 11). Plaintiff discloses several unsuccessful efforts to contact attorneys via written correspondence and the declination letters from four firms. Accordingly, he appears to have made reasonable efforts to retain counsel on his own. With respect to his ability to pursue this action pro se, Plaintiff states that he is unable to represent himself due to his age, medical conditions, and limited education. He indicates that he is in his seventies, has a high school education, has visual and hearing impairment, and is currently taking twelve medications for various medical conditions. Despite these obstacles, the Court finds that Plaintiff can proceed pro se, at least for now. Plaintiff's

---

[2] In evaluating Plaintiff's Motions for Recruitment of Counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) and related authority.

pleadings demonstrate an ability to construct coherent sentences, relay information, and clearly communicate to the Court. Plaintiff appears competent to try this matter without representation at this early stage in the case. Once discovery has commenced, if Plaintiff has significant difficulty, he may refile his motion.

### MOTION FOR SERVICE

Plaintiff has filed a motion for service of process at Government Expense. (Doc. 4). The motion is **DENIED as moot.** Plaintiff has been granted leave to proceed *in forma pauperis,* and therefore, the Court is obligated to arrange service on his behalf.

### DISPOSITION

For the reasons set forth above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** will proceed against Defendant Percy Meyers. **COUNT 1** is **DISMISSED without prejudice** as to David Mitchell, Wexford Health Sources, Inc., Christine Brown, and John Does. Because there are no remaining claims against them, the Clerk of Court is **DIRECTED** to terminate Mitchell, Wexford Health Sources, Inc., Christine Brown, and John Does as defendants in this case.

Because Plaintiff's claims involve allegations regarding his medical care, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court shall prepare for Percy Meyers the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is directed to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendant's place of employment. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant,

Page 7 of 8

and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If Defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with Defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

All Defendant is **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendant only needs to respond to the issues stated in this Merit Review Order.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: December 5, 2023**

                       *s/Stephen P. McGlynn*
                       **STEPHEN P. MCGLYNN**
                       **United States District Judge**